## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| CITY OF ENGLEWOOD,<br><br>                  Interpleader Plaintiff,<br><br>v.<br><br>CHUKWUEMEKA EZEKWO, *et al.*,<br><br>                Interpleader Defendants. | Civil Action No.<br><br>20-12799 (SDW) (LDW)<br><br>**REPORT AND RECOMMENDATION** |

### LEDA DUNN WETTRE, United States Magistrate Judge

Before the Court are Motions for Summary Judgment by interpleader claimants Maggiano, DiGirolamo & Lizzi, PC ("Maggiano"), Romanucci & Blandin LLC ("Romanucci"), Joshua Moskovitz, Esq. ("Moskovitz"), and Plaintiff Funding Holding, LLC ("LawCash") (ECF Nos. 39, 47, 54, 61, 80). *Pro se* claimants Chukwuemeka Ezekwo and his mother Ifeoma Ezekwo (collectively, the "Ezekwos") filed a Motion to Compel Release of Funds (ECF No. 91), which the Court construes as a Motion for Summary Judgment. Ifeoma Ezekwo also filed opposition to the other claimants' Motions for Summary Judgment. (ECF No. 97). The Honorable Susan. D. Wigenton, U.S.D.J., referred the Motions to the undersigned for a Report and Recommendation. They are decided without oral argument pursuant to Rule 78 of the Federal Rules of Civil Procedure. Having considered the parties' written submissions, and for good cause shown, the Court respectfully recommends that Maggiano's Motion for Summary Judgment (ECF Nos. 54, 80) be **GRANTED**; Romanucci's Motion for Summary Judgment (ECF No. 47) be **GRANTED**

**AS MODIFIED**; Moskovitz's Motion for Summary Judgment (ECF No. 39) be **GRANTED**; and

LawCash's Motion for Summary Judgment (ECF No. 61) be **GRANTED AS MODIFIED**.[1]

## I.    BACKGROUND

This interpleader action was initiated to apportion a $1.31 million settlement reached in an

underlying civil rights action, *Ezekwo v. Quirk*, Civ. A. No. 15-3167 (SDW) (LDW), amongst the

Ezekwos, their former attorneys in the underlying action, and two litigation funding companies.

### A.    District Court Proceedings in the Underlying *Ezekwo v. Quirk* Action

In the *Quirk* action, the Ezekwos asserted excessive force claims relating to a physical

confrontation with three City of Englewood police officers at Englewood Hospital and Medical

Center on May 5, 2013.  Ifeoma Ezekwo entered into a July 16, 2015 contingency fee retainer

agreement with Romanucci pursuant to which Romanucci agreed to pursue claims on her behalf

relating to the May 5, 2013 incident and to advance the costs of litigation during and up to the time

of trial.  (Romanucci Statement of Material Facts ("SOMF") ¶¶ 1, 3, 7, ECF No. 47-2).

Additionally, the retainer agreement provided that:

> If [Romanucci] recovers money for you, which is greater than the costs and
> expenses incurred by this firm in presenting your claim . . . you will pay
> [Romanucci] a legal fee.  The fee will be based on a percentage of the net recovery
> the total recovered for all clients named in this Agreement, minus the costs and
> expenses related to the bringing of your claim . . . .  The fee in accordance with
> New Jersey Court Rule 1:21.7 will be as follows:
>
> 33 1/3 of the first $750,000 net recovery;
> 30% of the next $750,000 net recovery;
> 25% of the next $750,000 net recovery;
> 20% of the next $750,000 net recovery.

---

[1] The Court proceeds despite the Ezekwos' Notice of Appeal of this Court's March 14, 2022 Order which denied their motion to compel the City of Englewood to release the interpleaded funds to them, lifted a stay of proceedings, and reinstated the claimants' motions for summary judgment. (ECF Nos. 96, 103).  The March 14, 2022 Order is not a "final decision" that may be appealed under 28 U.S.C. § 1291, and the Ezekwos' appeal of this Order does not deprive the District Court of jurisdiction to resolve the case on the merits.  *Venen v. Sweet*, 758 F.2d 117, 121 (3d Cir. 1985).

(Romanucci SOMF ¶ 4; Romanucci Retainer Agreement, ECF No. 47-4).  Ifeoma Ezekwo and Romanucci signed a July 14, 2015 engagement letter retaining Cimino Law, LLC as local counsel at an hourly rate of $300 per hour for substantive legal work, $250 per hour for work related to preparing documents for filing with the Court, and $100 per hour for work performed by paralegals or law clerks.  (Romanucci SOMF ¶¶ 5-6; Cimino Law Retainer Agreement, ECF No. 47-5). Romanucci agreed to advance the fees billed by local counsel on behalf of Ifeoma Ezekwo. (Romanucci SOMF ¶ 7).

Chukwuemeka Ezekwo was separately represented by Maggiano and entered into a July 16, 2015 contingency fee retainer agreement providing that Maggiano would advance the costs and expenses of the litigation and:

> If [Maggiano] recovers money for you, which is greater than the costs and expenses incurred by this firm in presenting your claim . . . you will pay [Maggiano] a legal fee.  The fee will be based on a percentage of the net recovery the total recovered for all clients named in this Agreement, minus the costs and expenses related to the bringing of your claim . . . .  The fee in accordance with New Jersey Court Rule 1:21.7 will be as follows:
>
>> 33 1/3 of the first $750,000 net recovery;
>> 30% of the next $750,000 net recovery;
>> 25% of the next $750,000 net recovery;
>> 20% of the next $750,000 net recovery.

(Maggiano Retainer Agreement, ECF No. 80-3).[2]

The parties engaged in extensive discovery over a period of approximately sixteen months, complicated by the Ezekwos' decision not to be deposed, give testimony at trial, or present expert

---

[2] The Court notes that Maggiano failed to submit a statement of undisputed material facts along with its moving brief, on which basis alone the Court could dismiss the motion.  *See* Local Civil Rule 56.1(a).  However, the Court will relax the requirements of Local Civil Rule 56.1 and consider the undisputed facts as set forth in the Declaration of Michael Maggiano, Esq. and exhibits thereto "in the interest of judicial economy and upon no finding of bad faith." *Fox v. Bayside State Prison*, Civ. A. No. 14-5344, 2016 WL 589673, at *3 (D.N.J. Feb. 11, 2016).

medical testimony in their own case.    (Romanucci SOMF ¶¶ 14-18).    Following settlement conferences before the undersigned on February 2, 2017 and March 28, 2017, the parties informed the Court that they had reached a settlement in principle to resolve all claims for $1.31 million. However, the Ezekwos refused to sign the settlement agreement, and the City of Englewood filed a motion to enforce the settlement.  (Civ. A. No. 15-3167, ECF No. 87).  In a letter dated July 7, 2017, the Ezekwos informed the Court that they had terminated their attorney-client relationships with Romanucci and Maggiano.  (Civ. A. No. 15-3167, ECF No. 101; Romanucci SOMF ¶ 33).

The Ezekwos appeared *pro se* at a November 6, 2017 evidentiary hearing before the undersigned on the pending motion to enforce.  Maggiano and Romanucci testified at the hearing pursuant to subpoenas from the defense; the Ezekwos cross-examined their former attorneys but declined the opportunity to testify themselves as to the existence of an enforceable settlement agreement.  *Ezekwo v. Quirk*, Civ. A. No. 15-3167, 2017 WL 6046859, at *2 (D.N.J. Nov. 17, 2017).  Following the evidentiary hearing, this Court entered a Report and Recommendation dated November 17, 2017 recommending that the District Court find that the parties reached an enforceable settlement as follows:

> In exchange for the payment of a total of $1,310,000 to be paid by, or on behalf of, defendants to plaintiffs (with a gross amount of $1 million being allocated to plaintiff Chukwuemeka Ezekwo and the remainder being allocated to plaintiff Ifeoma Ezekwo), and without admission of liability by any party, plaintiffs and their heirs, executors and assigns hereby agree to release the defendants and their insurers (Garden State Municipal Joint Insurance Fund, Britt Insurance Group and Lloyd's of London) as well as all of defendants' and defendants' insurers' employers, partners, co-workers and employees, from any and all rights, claims and injuries, known or unknown, asserted or not asserted, arising out of the incident described in the Complaint filed in *Ezekwo v. Englewood*, 15-CV-3167 (SDW) (LDW) that occurred on or about May 5, 2013 at Englewood Hospital and Medical Center.

*Id.* at *5.

### B.    Subsequent Challenges to the *Ezekwo v. Quirk* Settlement

On January 2, 2018, the Ezekwos jointly entered into a retainer agreement with Moskovitz[3] to "provide legal services in connection with moving to set aside the [District] Court's order enforcing the settlement" in *Ezekwo v. Quirk*. (Moskovitz Am. SOMF ¶¶ 1, 3, ECF No. 86). The retainer agreement provided for Moskovitz to perform legal services at a discounted hourly rate of $325 and if his "efforts to set aside the settlement are unsuccessful, payment for such work will become due and owing and will be paid from [the Ezekwos'] share of the settlement proceeds." (Moskovitz Am. SOMF ¶ 4; Moskovitz Retainer Agreement, ECF No. 39-2). Moskovitz agreed to advance the costs of the litigation. (Moskovitz Am. SOMF ¶ 5). The Ezekwos granted Moskovitz a lien on the settlement proceeds to secure payment of legal fees, costs, and expenses. (Moskovitz Am. SOMF ¶ 6). Moskovitz obtained an extension of time and ultimately filed objections to the undersigned's Report and Recommendation on March 24, 2018. (Civ. A. No. 15-3167, ECF No. 165). In an Order dated April 16, 2018, Judge Wigenton overruled the Ezekwos' objections, adopted the Report and Recommendation, and granted the City's motion to enforce the settlement. *Ezekwo v. Quirk*, Civ. A. No. 15-3167, 2018 WL 4091068 (D.N.J. Apr. 16, 2018).

The Ezekwos then entered into an August 6, 2018 letter retainer agreement with Moskovitz to pursue an appeal of Judge Wigenton's Order enforcing the settlement; the letter agreement incorporated the terms of the prior retainer agreement including Moskovitz's hourly billing rate, the Ezekwos' agreement to reimburse him for costs and expenses incurred in connection with the

---

[3] The Ezekwos officially retained the law firm Bernstein Clarke & Moskovitz PLLC and were represented by Moskovitz and Lance Clarke, Esq. (Moskovitz Am. SOMF ¶¶ 1-7). That firm later dissolved, with Moskovitz retaining the lien for legal fees and expenses owed to the firm by the Ezekwos. (*Id.* ¶¶ 29-30). The Court will refer to counsel as "Moskovitz" for simplicity.

appeal, and their agreement that Moskovitz's fees and costs would be paid from the settlement proceeds.  (Moskovitz Am. SOMF ¶¶ 10-13; Moskovitz Letter Agreement, ECF No. 39-2). Moskovitz pursued the appeal, and although the Third Circuit found that "the District Court admirably fulfilled its duties" in deciding the motion to enforce the settlement agreement, it remanded the case "for the limited purpose of (1) allowing the Ezekwos one final chance to submit their testimony on the record and (2) allowing the City to cross-examine them on that testimony." *Ezekwo v. Quirk*, 784 F. App'x 79, 82 (3d Cir. 2019).  Upon remand, Judge Wigenton scheduled an evidentiary hearing for March 3, 2020 for the purpose of allowing the Ezekwos to testify, as instructed by the Third Circuit.  Moskovitz appeared at the hearing, but the Ezekwos did not. (Moskovitz Am. SOMF ¶¶ 20-23).  Accordingly, Judge Wigenton entered an Order dated March 4, 2020 adopting the undersigned's November 17, 2017 Report and Recommendation for a second time and granting the City of Englewood's motion to enforce the settlement.  *Ezekwo v. Quirk*, Civ. A. No. 15-3167, 2020 WL 1048670 (D.N.J. Mar. 4, 2020).

Moskovitz filed a notice of appeal of Judge Wigenton's second Order enforcing the settlement and paid the filing fee on the Ezekwos' behalf but declined to represent them further in a second appeal.  (Moskovitz Am. SOMF ¶¶ 25-27).  The Third Circuit dismissed the Ezekwos' appeal of the second Order enforcing the settlement for failure to timely prosecute.  *Ezekwo v. Quirk*, No. 20-1728, 2020 WL 5814217 (3d Cir. June 17, 2020).  Thus, after extensive litigation, it has been conclusively established that the Ezekwos agreed to settle their claims in the underlying matter for a total of $1.31 million, $1 million of which is allocated to Chukwuemeka Ezekwo's claims and the remaining $310,000 to Ifeoma Ezekwo's claims.

### C.    Litigation Funding Agreements

Although they later contested the settlement, the Ezekwos relied on the anticipated proceeds of the *Ezekwo v. Quirk* lawsuit to obtain what the Court will refer to as "cash advances" several times.  On September 30, 2015, Chukwuemeka Ezekwo entered into an Assignment, Sale & Equitable Lien Agreement pursuant to which he assigned a portion of the proceeds of the *Ezekwo v. Quirk* lawsuit to CVP Funding, LLC in exchange for $15,000.  (Romanucci SOMF ¶ 30; CVP Agreement, ECF No. 47-10).  Chukwuemeka Ezekwo directed Maggiano to pay directly to CVP Funding the full amount due under the terms of the Agreement out of the proceeds of any verdict, judgment, or settlement.  (Romanucci SOMF ¶ 30; CVP Agreement, Ex. A, ECF No. 47-10).  On October 20, 2015, Ifeoma Ezekwo also entered into an Assignment, Sale & Equitable Lien Agreement with CVP Funding, assigning a portion of her share of the proceeds of the *Ezekwo v. Quirk* lawsuit for $15,000.  (Romanucci SOMF ¶ 31; CVP Agreement, ECF No. 47-11).

On November 13, 2018, Ifeoma Ezekwo entered into a Funding Agreement with LawCash pursuant to which she received $59,776 and assigned to LawCash a portion of her interest in the proceeds of the *Ezekwo v. Quirk* lawsuit.  (LawCash SOMF ¶¶ 20-22, 32, ECF No. 61-3; Funding Agreement, ECF No. 61-6).  Ifeoma Ezekwo further granted LawCash a lien and security interest in the proceeds of the lawsuit.  (LawCash SOMF ¶ 26).  Of the $59,776 she received from LawCash, $24,776 was used to pay off the October 20, 2015 obligation she owed to CVP Funding. (LawCash SOMF ¶ 33; Check, ECF No. 61-8).

### D.    The Interpleader Action

Following dismissal of the Ezekwos' second appeal of the *Quirk* case, the City of Englewood filed the instant interpleader action, alleging "legitimate fears of multiple claims directed against the litigation settlement monies" by the Ezekwos, their former counsel, and others.

(Compl. ¶ 37, ECF No. 1).  The Court granted the City of Englewood's motion to deposit $1,310,000 into the Court Registry Investment System Disputed Ownership Fund on December 21, 2020.  (ECF No. 12).  The Ezekwos filed an answer asserting counterclaims against Englewood and its counsel on February 1, 2021 and an amended answer and counterclaim on March 14, 2021.  (ECF Nos. 13, 18).  In an Opinion and Order dated June 11, 2021, Judge Wigenton dismissed the Ezekwos' counterclaim with prejudice and dismissed the City of Englewood from this action with prejudice.  *City of Englewood v. Ezekwo*, Civ. A. No. 20-12799, 2021 WL 2390087 (D.N.J. June 11, 2021).  Moskovitz filed an answer on November 20, 2020 and an amended answer on November 2, 2021.  (ECF Nos. 7, 84).  Maggiano filed a fee petition on April 21, 2021 and a formal answer on October 29, 2021.  (ECF Nos. 22, 78).  Romanucci filed a fee petition on May 4, 2021 and a formal answer on October 28, 2021.  (ECF Nos. 23, 76).  The Court granted LawCash's motion to intervene on August 13, 2021 (ECF No. 52), and LawCash filed an answer on August 16, 2021.  (ECF No. 53).

Maggiano, on behalf of CVP Funding, and LawCash assert interests in the interpleaded funds in accordance with the litigation funding agreements executed by the Ezekwos.  CVP Funding's claim against settlement funds allocated to Chukwuemeka Ezekwo amounts to $31,616 as of September 30, 2021.  (Maggiano Decl., Exs. D, E).  LawCash's claim against settlement funds allocated to Ifeoma Ezekwo amounts to $156,300.11 as of November 11, 2021.  (LawCash SOMF ¶ 37).  Maggiano, Romanucci, and Moskovitz each seek to assert and enforce statutory attorney liens on the interpleaded funds for legal work performed on behalf of the Ezekwos.  Maggiano asserts a $338,112.36 lien against settlement funds allocated to Chukwuemeka Ezekwo, comprising a $319,344.70 contingency fee and $18,767.66 in unpaid expenses.  (Maggiano Decl., Ex. D).  Romanucci asserts a $148,640.95 lien against settlement funds allocated to Ifeoma

Ezekwo, comprising a $103,333.33 contingency fee[4] and $45,307.62 in unpaid expenses. (Romanucci SOMF ¶¶ 10, 12). Moskovitz asserts a $107,365.39 lien for legal services provided to the Ezekwos jointly, comprising $95,189 in unpaid attorneys' fees billed hourly and $12,176.39 in unpaid expenses. (Moskovitz Am. SOMF ¶¶ 32-33). Former counsel each served their respective clients with written notice of their right to request fee arbitration in accordance with New Jersey Court Rule 1:20A. (Maggiano Cert. ¶ 1, Ex. A, ECF Nos. 93-1, 93-3; Romanucci Letter, ECF No. 94; Moskovitz Am. SOMF ¶ 34). By Order dated November 2, 2021, the Court stayed these proceedings pending the expiration of the Ezekwos' time to seek fee arbitration or the outcome of any fee arbitration proceedings, whichever was earlier. (ECF No. 85). Counsel subsequently informed the Court that more than 30 days had passed since they advised the Ezekwos of their right to pursue fee arbitration, but no fee arbitration proceedings were commenced. (ECF Nos. 87, 93, 94). Accordingly, the Court lifted the stay and reinstated the claimants' summary judgment motions on their claims to the interpleaded funds. (ECF No. 96). Ifeoma Ezekwo filed a "total opposition to any motion for summary judgment," and requests that the Court release the entirety of the interpleaded funds to her and her son.[5] (Opp. Cert. ¶¶ 1, 13, ECF No. 97). Maggiano, Romanucci, Moskovitz, and LawCash do not oppose each other's motions.

---

[4] Romanucci calculated the contingency fee as 33 1/3% of Ifeoma Ezekwo's $310,000 gross recovery instead of her $264,692.38 net recovery.

[5] Although the opposition papers refer to both Ezekwos, the Court construes the opposition as submitted by Ifeoma Ezekwo only. Notably, the "Certification of Opposition" is signed only by Ifeoma Ezekwo, and as Ifeoma Ezekwo is proceeding *pro se*, she cannot represent the interests of another party. *See Murray v. City of Philadelphia*, 901 F.3d 169, 170 (3d Cir. 2018) ("Although an individual may represent herself or himself pro se, a non-attorney may not represent other parties in federal court.").

## II.    DISCUSSION

An interpleader action allows a stakeholder "holding property to join in a single suit two or more persons asserting claims to that property." *NYLife Distribs., Inc. v. Adherence Grp., Inc.*, 72 F.3d 371, 372 n.1 (3d Cir. 1995).  The stakeholder may "file suit, deposit the property with the court, and withdraw from the proceedings.  The competing claimants are left to litigate between themselves." *Metropolitan Life Ins. Co. v. Price*, 501 F.3d 271, 275 (3d Cir. 2007).  "The typical interpleader action proceeds in two distinct stages.  During the first stage, the court determines whether the interpleader complaint was properly brought and whether to discharge the stakeholder from further liability to the claimants.  During the second stage, the court determines the respective rights of the claimants to the interpleaded funds." *Prudential Ins. Co. of Am. v. Hovis*, 553 F.3d 258, 262 (3d Cir. 2009) (citations omitted).  Judge Wigenton previously determined that the City of Englewood's interpleader complaint was properly brought, that the Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1335, and that Englewood should be dismissed from this action with prejudice. *City of Englewood v. Ezekwo*, 2021 WL 2390087, at *3. *See Obermayer Rebmann Maxwell & Hippel LLP v. West*, Civ. A. No. 15-81, 2015 WL 9489791, at *2 (W.D. Pa. Dec. 30, 2015) (interpleader action to disburse settlement proceeds to litigation funding companies); *Home Ins. Co. v. Gigi Fashions, Inc.*, 267 F. Supp. 958, 960 (D.N.J. 1967) (interpleader action to apportion settlement proceeds amongst claimants including attorneys asserting attorney liens). The parties now seek summary judgment on their respective claims to the interpleaded funds.

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "A factual dispute is material if it bears on an essential element of the [claimant's] claim, and is genuine if a reasonable jury could find in favor of the nonmoving party." *Natale v. Camden Cty. Corr. Facility*,

318 F.3d 575, 580 (3d Cir. 2003). *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted."). In considering a motion for summary judgment, the Court views all evidence in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The moving party bears the initial burden of establishing that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). If the moving party satisfies its burden, the opposing party "must present actual evidence that creates a genuine issue as to a material fact for trial." *Serodio v. Rutgers*, 27 F. Supp. 3d 546, 550 (D.N.J. 2014). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita*, 475 U.S. at 587 (quotation omitted).

As the Ezekwos are proceeding *pro se*, the Court liberally construes their submissions. However, "merely because a non-moving party is proceeding pro se does not relieve him of the obligation under Rule 56(e) to produce evidence that raises a genuine issue of material fact." *Boykins v. Lucent Tech., Inc.*, 78 F. Supp. 2d 402, 408 (E.D. Pa. 2000). *See Jacobs v. Cumberland Cty. Dep't of Corr.*, Civ. A. No. 09-133, 2010 WL 5141717, at *3 (D.N.J. Dec. 8, 2010).

### A.    Attorney Liens

Maggiano, Romanucci, and Moskovitz assert attorney liens on the interpleaded settlement proceeds pursuant to N.J.S.A. 2A:13-5, which provides that an attorney "who shall appear in the cause for the party instituting the action . . . shall have a lien for compensation, upon his client's action, cause of action, claim or counterclaim or cross-claim, which shall contain and attach to a verdict, report, decision, award, judgment or final order in his client's favor, and the proceeds

thereof in whosesoever hands they may come." N.J.S.A. 2A:13-5. This statue "is grounded in equitable principles and was designed to protect attorneys who have represented their former clients competently and with diligence, but have gone unpaid." *Musikoff v. Jay Parrino's The Mint, L.L.C.*, 172 N.J. 133, 146 (2002).

"In New Jersey, case law has established the procedure for perfecting a lien once created." *Musikoff v. Jay Parrino's The Mint, L.L.C.*, Civ. A. No. 98-1456, 2000 WL 33775287, at *2 (D.N.J. Aug. 8, 2000). First, the attorney must "make application to the court, as a step in the proceeding of the main cause, by way of petition, which shall set forth the facts upon which he relies for the determination and enforcement of his alleged lien." *H & H Ranch Homes, Inc. v. Smith*, 54 N.J. Super. 347, 353 (App. Div. 1959). However, N.J.S.A. 2A:13-5 "does not require an attorney to file a petition to acknowledge and enforce an attorney's lien prior to settlement or judgment in the matter that has given rise to the lien itself." *Musikoff*, 172 N.J. at 136. Second, the attorney must comply with N.J. Court Rule 1:20A-6 by providing the client notice of the right to request fee arbitration. *Musikoff*, 2000 WL 33775287, at *4 ("[T]o perfect an attorney's lien for services, a two-prong mechanism has been established: an attorney is required not only to make an application to the court . . ., but also to serve a Pre-Action Notice to the client."); *Rosenfeld v. Rosenfeld*, 239 N.J. Super. 77, 80 (Ch. Div. 1989) ("Since the rules of practice were subsequently amended to provide for the arbitration of fee disputes, the procedural framework of *H & H Ranch Homes* should likewise be modified to require an attorney, prior to filing the [lien] petition, to notify the client of the remedy of arbitration. If the client does not choose to have the fee dispute arbitrated, the petition should allege that notice was given as is required by R. 1:20A-6."). A petition for a charging lien may be "disposed of by the court where the facts are admitted."

*Toscano Law Firm, LLC v. Haroldson*, Docket No. A-2909-17T2, 2020 WL 2374835, at *13 (N.J. Super. Ct. App. Div. May 12, 2020) (quotation omitted).

Here, the procedural requirements for establishing an attorney charging lien have been satisfied. Maggiano, Romanucci, and Moskovitz each filed an appropriate petition or pleading setting forth the terms of their retainer agreements, the scope of their representation of the Ezekwos, and their claims for unpaid attorneys' fees and expenses. These applications were filed within a reasonable time following the conclusion of the lengthy proceedings to determine the enforceability of the settlement. Counsel appropriately filed their petitions in the interpleader action, as this case was initiated specifically to resolve such claims, is a direct continuation of the underlying civil rights action, and is being overseen by the same District Judge and Magistrate Judge who presided over the entirety of the *Ezekwo v. Quirk* matter. Counsel served their respective clients with notice of their right to request arbitration to determine the amount of the charging liens, more than 30 days have passed since service of these notices, and the Ezekwos have not pursued fee arbitration. *See* Opp. Cert. ¶ 9 (confirming that fee arbitration "did not meet the Ezekwos['] criteria in consideration of possible actions").

Accordingly, the Court proceeds to fix the amount of Maggiano, Romanucci, and Moskovitz's charging liens. In so doing, the Court looks to the terms of the retainer agreements themselves because "[a]s between attorney and client, their agreement ordinarily controls unless it is overreaching or is violative of basic principles of fair dealing or the services performed were not reasonable or necessary. Thus, although the court has the power and authority to review the fairness of the agreement and the reasonableness of the fee charged, it should ordinarily defer to the parties' agreement and the fee charged thereunder . . . ." *Gruhin & Gruhin, P.A. v. Brown*, 338 N.J. Super. 276, 281 (App. Div. 2001) (citation omitted). *See Cohen v. Radio-Electronics Officers*

13

*Union, Dist. 3, NMEBA*, 146 N.J. 140, 155 (1996) ("Agreements between attorneys and clients concerning the client-lawyer relationship generally are enforceable, provided the agreements satisfy both the general requirements for contracts and the special requirements of professional ethics.").

### 1.    Maggiano

Chukwuemeka Ezekwo submitted no opposition to his former counsel's motion for summary judgment. He has raised no facts challenging the validity or enforceability of the retainer agreement he entered into with Maggiano, including the contingent fee provision. He does not contend that the fees sought by Maggiano are excessive or unreasonable. As the retainer agreement conforms in all respects to the limits on contingent fee arrangements set forth in New Jersey Court Rule 1:21-7, it is presumptively fair and reasonable. Accordingly, the Court finds that Maggiano is entitled to an attorney charging lien, to be paid from the funds on deposit with the Court, calculated in accordance with the formula set forth in the retainer agreement. Chukwuemeka Ezekwo recovered $1 million in the *Ezekwo v. Quirk* settlement. Maggiano incurred $18,767.66 in expenses for service of process, service of Court documents, obtaining medical records, and deposition and transcript costs. (Maggiano Decl., Ex. D, ECF No. 80-6). The Court has reviewed these expenses and finds that they were reasonable and necessary for the prosecution of Chukwuemeka Ezekwo's claims, and the retainer agreement expressly provides for reimbursement of such expenses. Accordingly, Chukwuemeka Ezekwo's net recovery is $981,232.34. Pursuant to the retainer agreement, Maggiano is entitled to 33 1/3% of the first $750,000 net recovery ($250,000) plus 30% of the remaining $231,232.34 net recovery ($69,369.70), for a total of $319,369.70. The Court notes, however, that Maggiano only requested a charging lien in the amount of $319,344.70, perhaps due to a mathematical error in his calculation of the first 33 1/3%

net recovery figure.  While the difference in Maggiano's and the Court's calculations is *de minimus*, the Court must limit Maggiano's lien to the $319,344.70 actually sought, as this is amount for which Chukwuemeka Ezekwo received notice.  Maggiano will also be reimbursed for $18,767.66 in expenses, for a total of $338,112.36.

The Court is aware that "[a]n attorney hired on a contingent fee basis and later discharged before completion of the services is not entitled to recover fees on the basis of such contingent agreement; instead, he or she may be entitled to recover on a *quantum meruit* basis for the reasonable value of the services rendered." *Glick v. Barclays De Zoete Wedd, Inc.*, 300 N.J. Super. 299, 310 (App. Div. 1997).  Chukwuemeka Ezekwo terminated Maggiano's representation after the underlying civil rights action was settled in principle but prior to enforcement of the settlement. To the extent this constitutes a discharge prior to completion of legal services, the Court finds that Maggiano is entitled to a fee in *quantum meruit*.  "Because the proper measure of compensation under *quantum meruit* is as much as is deserved, the crucial factor in determining the amount of recovery is the contribution which the lawyer made to advancing the client's cause." *Id.* at 310-11 (citation omitted).  Maggiano represented Chukwuemeka Ezekwo for approximately two years, engaged in extensive discovery including numerous depositions of hospital security officers, nurses, and members of the Englewood Police Department, and participated in two settlement conferences before the undersigned which resulted in a settlement in principle.  Chukwuemeka Ezekwo's $1 million recovery is entirely attributable to the efforts of Maggiano, and Maggiano's contingency fee accrued at the time the case was settled, prior to his termination.  It would be inequitable to allow the client to discharge his or her attorney after settlement of the case in order to avoid paying the contingency fee.  *See Vaccaro v. Estate of Gorovoy*, 303 N.J. Super. 201, 206 (App. Div. 1997).  Therefore, the Court alternately finds that Maggiano is entitled to $319,344.70

in attorney's fees plus $18,767.66 in expenses, as provided in the retainer agreement, as *quantum meruit* compensation for the reasonable value of his legal services. *See Cohen*, 146 N.J. at 163 (finding that the Court "may consider the fee specified in the retainer agreement as the basis for determining the reasonable value of the lawyer's services" in *quantum meruit*); *Buckelew v. Grossbard*, 189 N.J. Super. 584, 588 (N.J. Super. Ct. 1983) (calculating *quantum meruit* compensation for discharged attorney by applying contingency fee percentage provided in retainer agreement to amount of settlement offer).

## 2. Romanucci

Ifeoma Ezekwo opposes Romanucci's fee petition and argues that he is not entitled to recoup a fee because he committed malpractice by "collud[ing] with [her] enemies" to settle the underlying civil rights claim and by testifying at the November 6, 2017 evidentiary hearing on the motion to enforce settlement pursuant to a subpoena. (Opp. Cert. ¶ 7). She further contends that former counsel, Judge Wigenton, and the undersigned are subject to criminal liability for, among other things, obstruction of justice, intimidation, coercion, and RICO violations, presumably in connection with settling and then enforcing the settlement in the *Ezekwo v. Quirk* matter.[6] However, as evidenced by her prayer for relief, which requests that the Court allow the Ezekwos' numerous pending and closed cases to go to trial, Ifeoma Ezekwo's opposition appears to be little more than a repackaged version of the Ezekwos' oft-repeated and conclusively rejected challenges

---

[6] The Court pauses to address Ifeoma Ezekwo's contention that Maggiano, Romanucci, and Moskovitz communicated with the undersigned and Judge Wigenton in an *ex parte* manner. Other than in the undersigned's breakout sessions during the 2017 settlement conferences, the Court has never engaged in *ex parte* communications with any party in this action or in the underlying civil rights action. The Court understands Ifeoma Ezekwo to be using the term "*ex parte*" to refer to communications between the Ezekwos' counsel, defense counsel, and the Court for which the Ezekwos were not present. All proceedings other than the *Ezekwo v. Quirk* settlement conferences have been open to the public, and the Ezekwos' decision not to attend does not reflect any misconduct by their former counsel or the Court.

to the underlying *Ezekwo v. Quirk* settlement itself.  Moreover, Ifeoma Ezekwo's citation to a host of Model Rules of Professional Conduct, Rules of the Superior Court of Connecticut, and California Rules of Court she contends former counsel has violated, without any supporting facts describing counsel's allegedly improper conduct, is insufficient to raise a genuine issue of material fact about counsel's entitlement to a charging lien.  It is clear that Ifeoma Ezekwo was dissatisfied with Romanucci's services in the underlying action, and she expressed that dissatisfaction by terminating the representation, as is her right.  But termination of the attorney-client relationship does not bar former counsel from recovering some amount of fees for legal services rendered. *Dinter v. Sears, Roebuck & Co.*, 278 N.J. Super. 521, 531 (App. Div. 1995) ("Of course, the client has the right to discharge the attorney with or without good cause, but not necessarily without compensation.").

The Court notes that Ifeoma Ezekwo has raised no facts challenging the validity or enforceability of the retainer agreement she entered into with Romanucci, including the contingent fee provision, and the retainer agreement conforms in all respects to the limits on contingent fee arrangements set forth in New Jersey Court Rule 1:21-7.  As with Maggiano, Romanucci represented Ifeoma Ezekwo for approximately two years, engaged in extensive discovery, and negotiated the settlement of the *Ezekwo v. Quirk* matter on her behalf.  The representation was terminated after the underlying civil rights action was settled in principle but prior to enforcement of the settlement.  Her $310,000 recovery is solely attributable to his efforts.  Either pursuant to the terms of their contractual arrangement or as *quantum meruit* compensation for legal services provided, the Court finds that Romanucci is entitled to a charging lien, to be paid from the funds on deposit with the Court, in an amount calculated in accordance with the formula set forth in the retainer agreement.

17

Ifeoma Ezekwo recovered $310,000 in the *Ezekwo v. Quirk* action. Romanucci incurred $45,307.62 in expenses for advancing fees and costs incurred by local counsel Cimino Law, filing fees, service of process, service of Court documents, travel to Court appearances, expert fees, and deposition and transcript costs. (Romanucci Decl., Exs. D-1, D-2, ECF Nos. 47-8, 47-9). The Court has reviewed these expenses, including a line-by-line review of local counsel's billing records, and finds that they were reasonable and necessary for the prosecution of Ifeoma Ezekwo's claims, and the retainer agreement expressly provides for reimbursement of such expenses. Although Romanucci asserts a charging lien in the amount of $103,333.33 (one-third of Ifeoma Ezekwo's total recovery), the Court will determine the amount of his charging lien in accordance with the terms of the retainer agreement, which provides for a 33 1/3% contingent fee on the first $750,000 *net* recovery. Ifeoma Ezekwo's net recovery is $264,692.38. Romanucci is entitled to one-third of the net recovery, or $88,230.79, and $45,307.62 in expenses, for a total of $133,538.41.

### 3.     Moskovitz

Ifeoma Ezekwo previously filed a separate opposition to Moskovitz's summary judgment motion, accusing him in particularly strident language of essentially abandoning the Ezekwos' case, (ECF No. 59), and also accusing him, along with Romanucci, of violating various Rules of Professional Conduct. As discussed above, Ifeoma Ezekwo's allegations of malpractice and criminal conduct by Moskovitz are unsupported by facts and are more properly considered challenges to the validity of the underlying civil rights settlement, an issue that has been definitively resolved. Ifeoma Ezekwo additionally argues that Moskovitz "did not complete his work and cannot be paid." (*Id.* ¶ 10). To the extent she refers to Moskovitz's decision not to represent the Ezekwos in an appeal of Judge Wigenton's March 4, 2020 Order enforcing the

settlement for a second time, there is nothing in the record to suggest that a second appeal fell within the scope of representation as defined by the January 2, 2018 retainer agreement, the August 6, 2018 retainer agreement, or any other agreement between Moskovitz and the Ezekwos. Indeed, the January 2, 2018 retainer agreement expressly provides that "should [the Ezekwos'] action proceed to an appeal, . . . a supplementary retainer agreement with [Moskovitz] will be required before [Moskovitz] will provide any legal services related to such appeal." (Moskovitz Retainer Agreement ¶ 2). Moreover, the Ezekwos have presented no evidence pointing to any specific legal work left uncompleted, nor would such a fact necessarily bar Moskovitz from being paid for his previously-billed work filing objections to this Court's Report and Recommendation and appealing Judge Wigenton's April 16, 2018 Order enforcing the settlement.

Neither of the Ezekwos raise any factual dispute with respect to the validity or enforceability of the retainer agreement they entered into with Moskovitz, or with respect to the reasonableness of his hourly billing rates, the number of hours he devoted to their case, or any individual time entries billed. The Ezekwos agreed to pay Moskovitz $325 per hour of attorney time and he charged them $150 per hour for paralegal time, which are well within the range of reasonable billing rates for civil rights cases in this Circuit. *See, e.g.*, Attorney Fees Schedule, Community Legal Services, *available at* https://clsphila.org/about-community-legal-services/attorney-fees/ (citing billing rates of $280-$360 per hour for attorneys with 6-10 years of experience and $160-$200 per hour for paralegals). Although the Ezekwos take no issue with the amount of time Moskovitz devoted to their case, the Court has nonetheless reviewed Moskovitz's and Clarke's time entries line-by-line and finds that they reasonably spent 288.2 hours of attorney time and 10.16 hours of paralegal time pursuing objections to the Court's Report and Recommendation and an appeal to the Third Circuit, for a total of $95,189. (Moskovitz Decl., Ex.

D).  Moskovitz additionally incurred $12,176.39 in expenses for filing fees, transcripts, appellate printing fees, and travel for oral argument before the Third Circuit, all of which were reasonably incurred in the prosecution of the Ezekwos' objections to the settlement and are expressly reimbursable pursuant to the retainer agreements.  Accordingly, Moskovitz is entitled to a lien, to be paid from the funds on deposit with the Court, in the total amount of $107,365.39.[7]  Because Moskovitz jointly represented the Ezekwos, they bear equal responsibility for his lien and it shall be divided equally between them, with $53,682.70 to be paid from Chukwuemeka Ezekwo's $1 million portion of the settlement in the underlying civil rights action, and $53,682.69 to be paid from Ifeoma Ezekwo's $310,000 portion.

### B.    Litigation Funding Claims

According to the terms of the September 30, 2015 litigation funding agreement with CVP Funding, Chukwuemeka Ezekwo agreed to assign his right, title, and interest in a portion of the proceeds of the *Ezekwo v. Quirk* litigation to CVP Funding in exchange for $15,000.  (Funding Agreement, ¶ 1).  The value of the interest assigned to CVP Funding is calculated as the "Purchase Price, plus One and One Half Percent (1.5%) per thousand dollars per month for each six month period or any part thereof with no compounding from the date of the funding of the Purchase

---

[7] Moskovitz only began representing the Ezekwos after this Court issued a Report and Recommendation finding that the Ezekwos reached an enforceable settlement in the underlying civil rights action.  The Court is aware that statutory attorney liens for post-judgment legal services are not available under N.J.S.A. 2A:13-5.  *Giarusso v. Giarusso*, 455 N.J. Super. 42, 50 (App. Div. 2018).  To the extent some or all of Moskovitz's legal services could be considered to have occurred post-judgment, he would nonetheless be entitled to assert a lien on the settlement proceeds in the same amount pursuant to the terms of the retainer agreements, which specify that "if [Moskovitz's] efforts to set aside the settlement are unsuccessful, payment for such work will become due and owing and will be paid from [the Ezekwos'] share of the settlement proceeds," and the Ezekwos grant Moskovitz "a lien on [their] share of the settlement proceeds . . . for any sums due and owing to [Moskovitz] pursuant to the terms of this retainer agreement."  (Moskovitz Retainer Agreement ¶¶ 2, 4).

Price." (*Id.*, Disclosure Statement). Chukwuemeka Ezekwo granted CVP Funding an equitable lien upon any settlement proceeds. (*Id.* ¶ 1(a)(ii)). The CVP Funding litigation funding agreement is to be construed in accordance with the laws of the State of New Jersey. (*Id.* ¶ 10).

According to the terms of the November 12, 2018 litigation funding agreement with LawCash, Ifeoma Ezekwo agreed to "assign[] an interest equal to the funded amount, together with accrued use fee, compounded monthly, and other fees or costs, from the Proceeds of [the *Ezekwo v. Quirk*] Lawsuit to LawCash" in exchange for $59,776. (Funding Agreement, Section II, ¶ 1; LawCash SOMF ¶¶ 22, 32). The cash advance is subject to a 31.80% annual percentage rate. (Funding Agreement, Section 1). Ifeoma Ezekwo granted LawCash a lien and security interest in the proceeds of the lawsuit. (*Id.*, Section 3, ¶ 1; LawCash SOMF ¶ 26). If she did not recover any money in the *Ezekwo v. Quirk* action, she would owe LawCash nothing. (Funding Agreement, Section II, ¶ 1; LawCash SOMF ¶ 24). If she recovered less than the amount due to LawCash, "then LawCash's recovery will be limited to the Proceeds of the lawsuit." (Funding Agreement, Section II, ¶ 1; LawCash SOMF ¶ 25). Ifeoma Ezekwo further agreed that "the amount due you shall be withheld from any money collected as a result of the Lawsuit and paid immediately upon collection to LawCash. The amount due shall be paid immediately after my attorney fees (including the expenses charged by my attorney for costs) and after payment to any lien holders that might exist of record as of this date, or which may have priority by law. I will not receive any money from the Proceeds of the Lawsuit until LawCash has been paid in full." (Funding Agreement, Section 3, ¶ 1; Law Cash SOMF ¶ 26). The LawCash litigation funding agreement is to be construed in accordance with the laws of the State of New York. (Funding Agreement, Section 7, ¶ 5; LawCash SOMF ¶ 21).

The Court has carefully reviewed Ifeoma Ezekwo's "total opposition to any motion for summary judgment," but the opposition brief focuses only on former counsel's claims and makes no mention of any litigation funding agreement, CVP Funding, or LawCash.  She has presented no evidence that raises any issue of fact with respect to the CVP Funding or LawCash claims. However, lack of opposition alone does not entitle the interpleader claimants to summary judgment, and the court "is still required to satisfy itself that summary judgment is proper because there are no genuine disputes of material fact and that [movants] are entitled to judgment as a matter of law in order to grant summary judgment." *Pearson v. DeFilippo*, Civ. A. No. 18-16198, 2021 WL 2525689, at *3 (D.N.J. June 17, 2021) (quotation omitted).

Here, neither the validity nor the enforceability of the litigation funding agreements is in dispute.[8]  The Ezekwos affirmatively sought cash advances from CVP Funding and LawCash, each were separately represented by counsel at the time they entered into the litigation funding agreements, and each manifested their assent to the terms of the agreements by initialing each page and signing the final page.  It is undisputed that CVP Funding and LawCash performed their end of the bargains and advanced the Ezekwos the agreed upon amounts, none of which has been repaid.  *See Cohn v. Fisher*, 118 N.J. Super. 286, 291 (N.J. Super. Ct. 1972) ("The essentials of a valid contract [under New Jersey law] are: mutual assent, consideration, legality of object, capacity of the parties and formality of memorialization."); *see also Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 427 (2d Cir. 2004) ("To form a valid contract under New York law, there must be an

---

[8] Under New Jersey's choice-of-law rules, "effect [is given] to contracting parties' private choice of law clauses unless they conflict with New Jersey public policy." *Gen. Motors Corp. v. New A.C. Chevrolet, Inc.*, 263 F.3d 296, 331 n.21 (3d Cir. 2001).  There being no suggestion that either funding agreement's choice of law provision conflicts with New Jersey public policy, the Court applies New Jersey law to its analysis of the CVP Funding agreement and New York law to its analysis of the LawCash agreement in accordance with the terms of each agreement.

offer, acceptance, consideration, mutual assent and intent to be bound." (quotation omitted)). Although the Ezekwos raise no defenses to the litigation funding claims, the Court notes that both New Jersey and New York courts have rejected champerty and usury challenges to non-recourse litigation funding agreements like the ones at issue here, where the litigation funding companies did not obtain the Ezekwos' cause of action against the City of Englewood and the litigation funding companies' interests were contingent upon the Ezekwos' recovering money in the *Quirk* lawsuit such that the funding arrangements are not loans. *See Obermayer*, 2015 WL 9489791, at *3 (upholding validity of non-recourse litigation funding agreement under New York law); *Cash4Cases, Inc. v. Brunetti*, 90 N.Y.S.3d 154, 155 (N.Y. App. Div. 2018) (litigation funding agreement enforceable under New York law where "defendant sought a cash advance from plaintiff, was represented by counsel, and acknowledged the terms of the agreement, which showed the impact of the interest rate in six-month increments, by initialing every page. Moreover, defendant received funds with no guaranteed obligation to repay, except from the proceeds, if any, recovered in his personal injury action"); *see also Dopp v. Yari*, 927 F. Supp. 814, 823 (D.N.J. 1996) (upholding enforceability of litigation funding agreement under New Jersey law and noting that "the collection of interest in excess of the lawful rate is not usurious if collection of the entire interest is at risk and depends upon a contingent event and provided [that] the contract was entered into in good faith and without the intent to evade the usury laws"). Accordingly, both LawCash and Maggiano, on behalf of CVP Funding, are entitled to summary judgment on their claims to the interpleaded funds. CVP Funding, via Maggiano, is entitled to recover the entirety of its $31,616 claim[9] from the settlement proceeds allocated to Chukwuemeka Ezekwo.

---

[9] As the CVP Funding obligation continues to accrue interest, this amount may be adjusted upon sufficient proof of the total due and owing at the time of entry of any judgment in Maggiano's favor.

With respect to LawCash, however, there are insufficient funds remaining from Ifeoma Ezekwo's share of the settlement proceeds to satisfy the full amount of its $156,300.11 claim. LawCash concedes that, in accordance with the terms of the Funding Agreement, attorneys' fees and expenses should be paid out prior to any disbursement to LawCash, and its recovery is limited to the remaining settlement proceeds. To the extent that Ifeoma Ezekwo argues that the entirety of her share of the interpleaded funds should be distributed directly to her, the plain terms of the LawCash Funding Agreement provide otherwise, and she "will not receive any money from the Proceeds of the Lawsuit until LawCash has been paid in full." (Funding Agreement, Section 3, ¶ 1). The Court has already determined that Romanucci is entitled to a $133,538.41 attorney lien and Moskovitz is entitled to a $53,682.69 attorney and/or contractual lien on Ifeoma Ezekwo's $310,000 share of the settlement proceeds. Therefore, the remainder of Ifeoma Ezekwo's share of the settlement funds – a total of $122,778.90 – should be distributed to LawCash.

## III.    CONCLUSION

For the foregoing reasons, the Court recommends that Maggiano's Motion for Summary Judgment (ECF Nos. 54, 80) be **GRANTED**; Romanucci's Motion for Summary Judgment (ECF No. 47) be **GRANTED AS MODIFIED**; Moskovitz's Motion for Summary Judgment (ECF No. 39) be **GRANTED**; and LawCash's Motion for Summary Judgment (ECF No. 61) be **GRANTED AS MODIFIED**. The Court further recommends that the District Court enter an Order directing the Clerk of Court to disburse the interpleaded settlement proceeds as follows:

| Distribution of Chukwuemeka Ezekwo's $1 million Share of Settlement Proceeds | |
| --- | --- |
| Maggiano | $338,112.36 |
| Maggiano on behalf of CVP Funding | $31,616.00 |
| Moskovitz | $53,682.70 |
| Chukwuemeka Ezekwo | $576,588.94 |
| **Distribution of Ifeoma Ezekwo's $310,000 Share of Settlement Proceeds** | |
| Romanucci | $133,538.41 |
| Moskovitz | $53,682.69 |

| LawCash | $122,778.90 |
|---------|-------------|

The parties are hereby advised that, pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, they have 14 days after being served with a copy of this Report and Recommendation to file and serve specific written objections to the Honorable Susan D. Wigenton, U.S.D.J.  The Clerk of Court is directed to serve copies of this Report and Recommendation on *pro se* parties Chukwuemeka and Ifeoma Ezekwo by U.S. Mail.

Dated:        July 6, 2022

                                             *s/ Leda Dunn Wettre*
                                             Hon. Leda Dunn Wettre
                                             United States Magistrate Judge


Original:      Clerk of Court
    cc:        Hon. Susan D. Wigenton, U.S.D.J.
               All Parties